**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-40496**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JUAN ESCAMILLA QUINTANILLA,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
**(95-CR-243-1)**
_____

April 7, 1997

Before REAVLEY, KING, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Juan Escamilla Quintanilla appeals the imposition of a two-level enhancement, for making an "express threat of death", to his base offense level for bank robbery.  We **AFFIRM**.

I.

In December 1995, Quintanilla entered a bank dressed in a Santa Claus outfit. Upon Quintanilla asking to speak with a bank manager, Debbie Bledsoe, a bank vice-president, met him in the

---

[*]     Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

lobby. Quintanilla told Bledsoe he wanted to speak with her privately and followed her to her office. Once there, Quintanilla told her, "You are being robbed". She replied, "This is not very funny", and Quintanilla responded "No, it's not". Quintanilla then raised his left hand, which was covered with white material (later determined to be a fake beard from the Santa Claus costume), and pointed it at Bledsoe. At this point, Quintanilla was about eight to ten inches away from her. According to Bledsoe, she could not see what was in Quintanilla's hand, but it "looked like there was something" there. Restated, she did not actually see a weapon in his hand.

Bledsoe told Quintanilla that she had no money in her office, so he followed her to the bank teller counter — with his raised hand pointed at her back — where she gave him approximately $4,700. He departed, but was soon apprehended.

In February 1996, Quintanilla pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a), in accordance with a plea agreement whereby the Government agreed to recommend a three-level reduction for acceptance of responsibility and a sentence at the low end of the applicable guideline range. The Presentence Investigation Report recommended, *inter alia*, a two-level enhancement under Guidelines § 2B3.1(b)(2)(F) for making an "express threat of death".

Quintanilla filed a written objection to this enhancement recommendation.  At the sentencing hearing, following Bledsoe's testimony about the robbery and argument by counsel, the court found that such a threat had been made. Counsel for Quintanilla moved to reopen the proceedings, and the court allowed Quintanilla to make a few statements, some of which contradicted Bledsoe's testimony. The court re-entered its earlier finding.

## II.

Quintanilla presents two issues: whether the district court's factual findings were clearly erroneous because it credited statements to Bledsoe that she never made; and whether the court misapplied the guideline because Quintanilla made, at best, only an implied threat of death.

## A.

Along this line, there is considerable disagreement between the parties as to the proper standard of review, primarily because there is some confusion in this circuit as to what standard applies to an express threat of death ruling.  Quintanilla states correctly that fact findings are reviewed for clear error but claims that the application of this guideline to the facts is reviewed *de novo*. The government maintains that Quintanilla's "misapplication" contention should be reviewed only for plain error, asserting that it is being raised for the first time on appeal.  It contends, in

the alternative, that application questions are reviewed for abuse of discretion.

We are not convinced that an express threat of death ruling is properly characterized as an "application" of a sentencing guideline. Application questions typically arise when a given set of facts are undisputed, and the district court is faced with two or more possible guidelines to apply to that conduct. *See United States v. Gonzales*, 40 F.3d 735, 738 (5th Cir. 1994). We review such questions *de novo*. *Id.*

Determining whether a given set of facts constitutes an express threat of death seems more analogous, for example, to the determination that a defendant's conduct constitutes "obstruction of justice", a finding reviewed only for clear error. *See United States v. Como*, 53 F.3d 87, 89 (5th Cir. 1995) (finding of "obstruction of justice" reviewed for clear error), *cert. denied*, 116 S. Ct. 714 (1996); *see also United States v. Puig-Infante*, 19 F.3d 929, 942 (5th Cir. 1994) (finding that criminal enterprise is "foreseeable" reviewed for clear error); *United States v. Fisher*, 7 F.3d 69, 70 (5th Cir. 1993) (finding of "abuse of position of trust" reviewed for clear error); *cf. United States v. Flucas*, 99 F.3d 173, 180 (5th Cir. 1996) (reviewing sentencing court's determination of "acceptance of responsibility" with "even more deference than the pure 'clearly erroneous' standard"), *cert. denied,* 117 S. Ct. 1097 (1997).

On the other hand, our court has suggested previously that an express threat of death ruling is reviewed *de novo*. *See* **United States v. Ashburn**, 20 F.3d 1336, 1340 (5th Cir.), *reinstated in part*, 38 F.3d 803, 807 n.11 (5th Cir. 1994) (en banc). And, we have characterized a finding under a different subsection of § 2B3.1(b)(2) as an "application" question and reviewed it *de novo*. *See* **United States v. McCarty**, 36 F.3d 1349, 1360 (5th Cir. 1994) (reviewing finding under § 2B3.1(b)(2)(C) that firearm was "brandished, displayed, or possessed" during a bank robbery — an "application of the sentencing guidelines" — *de novo*).

For purposes of this appeal, however, we need not resolve this dispute, because we conclude that under either *de novo* or clear error review, Quintanilla's sentence should be affirmed. Likewise, we need not address the contention that plain error review should be applied.

### B.

The commentary to § 2B3.1(b)(2)(F) states that an express threat of death "may be in the form of an oral or written statement, act, gesture, or combination thereof". U.S.S.G. § 2B3.1, comment. (n.6). In making its determination, a district court is to consider the intent of the guideline — "to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a

victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery". ***Id.***

The district court found that Quintanilla "created a gesture in the face and shape of a gun" and pointed it at Bledsoe with his hand hidden under a "Santa Claus beard". The court determined also that a reasonable person could conclude that there was a gun underneath the beard and that, as a whole, Quintanilla's conduct "would instill fear in a reasonable person beyond that necessary to commit the crime of bank robbery".

### 1.

Based on our review of the sentencing hearing transcript, we find no merit in Quintanilla's attack on the findings of fact. Although Quintanilla testified that he never pointed at Bledsoe, the court was entitled to credit Bledsoe's testimony as more credible, especially since Quintanilla did not testify to that effect until *after* the judge concluded (for the first time) that an express threat of death had been made.

### 2.

As for the ultimate determination that Quintanilla made an express threat of death, we refer to the application note accompanying § 2B3.1, permitting a court to base this finding on gestures or statements, or combinations thereof. U.S.S.G. § 2B3.1, comment. (n.6). The combination of Quintanilla's raising his covered left hand, forming the shape of a gun, pointing it at

Bledsoe from a distance of eight to ten inches, and saying "This is a bank robbery" and "No, it's not [a joke]" clearly fall within the parameters of this guideline.

### III.

For the foregoing reasons, Quintanilla's sentence is

**AFFIRMED.**